BIGELOW *versus* HILLMAN *& als.*

Although no evidence is produced of the legal laying out of a town way, that fact may be inferred after a long series of years, in connexion with other facts tending to show that it was a town way.

The mere *use* by the public of a town way for many years, will not divest the town of its jurisdiction over it.

An unrestricted vote to discontinue a town way, takes effect from its passage ; though the meeting at which it is passed, may be adjourned to a subsequent day.

Whether such a vote can be reconsidered, after the rights of third parties have intervened, *quere;*

Where one enters on land to which he has no title, nor justifies such entry under one claiming title, he cannot controvert the right of the party in possession.

ON REPORT from *Nisi Prius*, WELLS, J., presiding.

TRESPASS, *quare clausum.*

The brief statement filed by the defendants set forth, that the *locus in quo* was a common and public highway, &c., and the acts by them done, were what they might lawfully do in passing and repairing the same.

Before the alleged trespass the town of Livermore had discontinued the way, and the plaintiff had enclosed it and put it in a state of cultivation.

The plaintiff derived his title to the premises from two

deeds of warranty, one from E. G. Howard, in 1836, in which was this clause — "reserving roads as now traveled through said premises;" the other from Oliver Pettengill, in 1850, in which was the following, — "reserving a privilege for all public highways legally across the same." [The facts proved appear in the opinion.]

The case was submitted to the Court, upon the evidence reported, for a decision in accordance with the law.

*Walton*, for the defendants.

1. The right of way may be acquired by *user*, and the right thus acquired will be coëxtensive with the use. When such *use* continues twenty years, the presumption in favor of the right becomes conclusive. *Coolidge* v. *Learned*, 8 Pick. 504; *Sargeant* v. *Ballard*, 9 Pick. 251; *Bolivar Manf. Co.* v. *Neponset Manf. Co.*, 16 Pick. 241.

This rule is recognized in our R. S., c. 147, § 14.

2. The use of this way in Livermore was never limited so as to make it a private way, nor was it limited in its use to the inhabitants of Livermore so as to make it a town way. It was used as a *thoroughfare* from Kennebec to Paris and the western part of Oxford county. Therefore the town of Livermore had no power to shut it up, and their vote discontinuing it was void.

3. But the plaintiff has introduced some records of the town here from which it may be contended, that this way was laid out by the town of Livermore. To this we have two answers. — 1. May not a laying out or dedication of a way, *coextensive with its use*, be presumed and be as effectual for all practical purposes, as if such proceedings had been had, provided such use has been continued, open and notorious for upwards of 30 years; a private way may be enlarged by *user* into a town way, and a town way into a highway or thoroughfare. 2. But the original laying out was not in conformity with law. It does not appear, that any report to the town of the laying out by the selectmen was made previous to the vote of acceptance. The article in the warrant "to accept and discontinue roads," was too

general in its terms to authorize the acceptance of any road that might be prepared. There is no width given for the road, it is a mere line. Neither is it stated in the vote of acceptance whether the "road" was understood to be a highway, town way or private way. The character of the way is not attended to and *none* of the proceedings are conformable to law. *Todd* v. *Rome*, 2 Maine, 55; *Harlow* v. *Pike*, 3 Maine, 438; *Young* v. *Garland*, 18 Maine, 109; *State* v. *Sturtivant*, 18 Maine, 66; *Christs Church* v. *Woodward*, 26 Maine, 172; *Carlton* v. *The State*, 8 Blackford, 208; *Hayes* v. *Shackford*, 3 N. H. 10.

4. We contend, that the Court should make a distinction in records that are legal as far as they go, and are only deficient in not stating *all* the requirements of law, and those which show proceedings *none* of which are conformable to law. If those of the latter class are put in, they should not be allowed to rebut the presumption of law arising from more than 30 years use of the road by the public.

5. The plaintiff fails to prove his title to the *locus in quo*. There is a reservation in his deed not only of the right of way, but of the land itself covered by the way.

6. The town meeting at which the vote of discontinuance took place, was continued till after the road was fenced up by the plaintiff and till after the obstruction had been removed by the defendants. Such a vote commonly takes effect from the time when the meeting was finally adjourned, because during all that time, the article could not be considered as disposed of, the town having the right to re-consider the vote of discontinuance at any time during the same meeting; and that pending such meeting the road could not legally be shut up.

*Washburn,* for the plaintiff.

RICE, J. — The *locus in quo*, was, at the time of the alleged trespass, within the inclosure, and under the cultivation of the plaintiff. Prior to that time, and for a period

of more than thirty years, it had been used as a way over which the inhabitants of the town of Livermore, and the public generally, had, at their pleasure, passed and repassed. The town of Livermore in 1851, prior to the time when the plaintiff inclosed the premises, had, at a meeting legally called, voted to discontinue the way over the land enclosed by the plaintiff. The principal question raised for consideration is, whether it was such a way as could lawfully be discontinued by the town.

Our statute recognizes three distinct classes of ways, to wit; public highways, town ways and private ways, and prescribes the mode by which each may be established.

The existence of either is ordinarily proved by the record of the proceedings, by which such ways are laid out, located and established. The existence of either class may also be established by proof of dedication, or such long continued use as will raise the presumption that they were originally legally established, but at a period so remote that the record evidence thereof has been lost by lapse of time.

Where the existence of a way is proved by record, the record will of course determine its character, whether it be a public highway, town way or private way. But when evidence of usage is relied upon to establish the existence of a way, the character of that usage and the purposes for which it has been used, will have a tendency to distinguish the class within which it will fall.

The law confides the duty of laying out private ways and town·ways, which are designed principally for private convenience, or the accommodation of particular localities, to the town, or local authorities. Whereas, the establishment of public highways, which are designed for the accommodation of the great public, by opening thoroughfares from locations and sections of country remote from each other, and in which private and local convenience is made subordinate to the more enlarged necessities of the whole public, is confided to County Commissioners.

These distinctions apply more particularly to the manner of establishing and discontinuing ways, than to their use when established. Thus when a way is once opened, whether it be a public highway or a town way, it is alike subject to the use of the whole public. All citizens having occasion, may lawfully pass thereon, irrespective of the particular authority under which it had its origin. The rightful use of a town way is not limited to the inhabitants of the town in which it is located, nor are such inhabitants excluded from the use of public highways. Nor does the fact that the general public have used a town way for a long period of time change its character, or make it a public highway, otherwise all town ways would in process of time lose their distinctive character, and the jurisdiction of town officers over the ways, be wholly transferred to County Commissioners. Something more, therefore, than mere user by the general public, is required to divest towns of their jurisdiction, and convert established town ways into public highways. That change can only be effected by the official interposition of the County Commissioners.

The material questions presented by the case at bar are, how, and by what authority, was the way in question originally established? What was its original character? The defendants contend, that inasmuch as there is evidence that strangers had been accustomed to pass upon it, and as it had been used as a thoroughfare for travelers from different counties, and inasmuch as the plaintiff had failed to produce a record showing that it was legally laid out and established by authority of the town, the presumption of right must be as extensive as the use, and therefore it must be deemed to be a public highway, and as such, subject only to the jurisdiction of the County Commissioners.

The plaintiff on the other hand, contends that he does show the origin of the way, and although the records are incomplete, and do not show all the proceedings necessary to constitute a legal laying out by authority of the town, yet these records do show enough to raise the presumption

that the way was at its origin legally established by authority of the town, which presumption is confirmed and strengthened by the acts of the town and county since that time.

The defective records of the proceedings of a town may be introduced, as well as other testimony tending to prove that a way was laid out as a town way. *State* v. *Bigelow*, 34 Maine, 243; *Avery* v. *Stewart & al.* 1 Cush. 496.

The records of the town of Livermore, show that the town, in 1816, voted to accept the road in question. It was proved that said way was opened in 1818, by said town, and continued to be repaired by the inhabitants of said town from time to time, until discontinued; and was fenced out about three rods wide. It also appeared that said road was made on the ground where the selectmen run it out, before the vote of acceptance in 1816. It further appeared from the records of the court of sessions, that two of the inhabitants over whose land said road passed, appealed from the adjudication of the selectmen of said town, in regard to damages, and the question was referred to a committee agreed upon between the agent of said town, and the petitioners, and that said committee awarded damages in favor of the appellants, which damages, thus awarded, were afterwards paid by the town.

These facts all tend directly to prove that the road was originally established as a town way, and to repel the conclusion that it was a legally established public highway. Nor are these facts overcome, or materially weakened, from the consideration that it was, after it was opened, used by everybody who chose to use it; or that it was used as a thoroughfare for persons passing from Kennebec to Paris and the western part of Oxford county; or that it connected at each end with other public thoroughfares. As has already been remarked, all town ways are subject to the use of the general public, but do not by that use lose their distinctive character of town ways; nor are towns thereby divested of their jurisdiction over them.

We are therefore of opinion, that the legitimate inference

to be deduced from the facts in the case is, that the way in question was a town way, and as such it was competent for the town to discontinue it.

But it is objected that the town meeting at which the vote was passed to discontinue this way, was adjourned to a day subsequent to the time when the plaintiff erected his fences, and subsequent also to the day on which the defendants committed the alleged trespass, by removing said fences, and that said vote could only take effect from the day of the final adjournment of the meeting; because, it is contended, it was in the power of the town, at any time during the continuation of the meeting, to reconsider their vote by which the road had been discontinued.

Without considering whether it would be competent for a town to reconsider a vote, after the rights of third parties had intervened, dependent upon such vote, which may well be doubted, it is sufficient in this case, that the vote discontinuing this road was absolute in its terms, and at most, could be liable only to the contingency of being reconsidered at the adjourned meeting. That contingency never happened. The rights of the plaintiff under that vote, if deemed contingent until the final adjournment of the meeting, then became absolute, and related back to the day on which the vote was actually passed.

The case finds that the plaintiff was in the actual possession and occupation of the premises, and the defendants show no title thereto, nor do they claim to justify under any party who does claim title. They are not therefore in a position to contest the validity of the plaintiff's title. *Dolloff* v. *Hardy*, 26 Maine, 545.

A default is therefore to be entered, and damages assessed according to the agreement of parties.

SHEPLEY, C. J., and HATHAWAY and CUTTING, J. J., concurred.