ELLEN F. BRIGGS

*vs.*

LEWISTON AND AUBURN HORSE RAILROAD COMPANY.

Androscoggin.    Opinion April 14, 1887.

*Ways.    Street railroad.    Change of grade.    Location.    Trespass.*

The legislature and the city council can lawfully empower a street railroad company to locate and maintain its railroad in the streets of a city, without providing for additional compensation to the owner of the land.

If the company, acting under the authority of the city council, change the grade of the street, it commits no trespass against the land owner.

ON report.

The opinion states the case.

*Savage and Oakes*, for plaintiff.

Where land is bounded by a highway, the center line of the way is the boundary.  3 Wash. Real Prop. 635; *Johnson* v. *Anderson*, 18 Maine, 76; *Bangor House* v. *Brown*, 33 Maine, 309; *Id.* 502; *Warren* v. *Blake*, 54 Maine, 283; *Webber* v. *Overlock*, 66 Maine, 177; *Oxton* v. *Groves*, 68 Maine, 371; 45 Maine, 9; 59 Maine, 105; 13 N. H. 584; 45 Maine, 13; *Hunt* v. *Rich*, 38 Maine, 195.

If the plaintiff owns to the center of the highway, including the land upon which the acts of the defendant complained of were done, she can maintain trespass for the injury unless the defendant can in some way justify.  Angell on Highways, § § 301 to 309; Waterman on Trespass, Vol. 2. § 392; 28 Am. Dec. 300 and notes; *Robbins* v. *Borman and al.* 1 Pick. 122; *Stackpole* v. *Healy*, 16 Mass. 33; *Hunt* v. *Rich*, 38 Maine, 195.

The only effect the grant or license from the city can have is

to protect the company from any prosecution for disturbing the public rights.    2 Dillon, 548 ; 25 Conn. 19 ; 69 Am. Dec. 662, n. 1 ; 67 Ill. 445 ; 68 N. Y. 397 ; *Green* v. *City of Portland,* 32 Maine, 431.

The purpose (horse railroad,) becomes one which will accommodate the public presumably, and the privilege is one which the legislature has power to grant, upon one condition, — that provision shall be made for compensation for any private property taken for such purpose.    Const. of Maine, Art. 1, § 21 ; Cooley Const. Lim. 560 ; Dillon Mun. Corp.  § 477 ; 1 Redf. on Railways, 248 ; 2 Kent's. Com. 248 ; 2 Johns. 167 ; 7 Am. Dec. 526 ; 24 Am. Dec. 550 ; 45 Am. Dec. 61 ; 61 Am. Dec. 283 ; 11 Pet. 658 ; 13 Wall. 178 ; 51 N. H. 521 ; 33 Conn. 548.

In some states, when the owner is held to part with the fee of his land, where the highway is laid out, there is no question that the legislature may authorize the use of the street for the purpose, either of a horse or steam railroad, without any provision for payment of damages.    Dillon Mun. Corp. 574 and notes.

As to the rule in states where the owner does not part with the fee, we find *Williams* v. *N. Y. Central R. R. Co.* to be a leading and carefully considered case, overruling the position previously taken by the court of that state (New York).    16 N. Y. 97 ; 69 Am. Dec. 663 and note.

We are aware that this is opposed to the decisions in Massachusetts and some other states, but it is followed by the courts of many states, and we think the reasoning by which the result is reached is sound.

" The right of the public in a highway is an easement, and one that is vested in the whole public.    Is not the right of the railroad company, if it has a right to construct its track upon the road, also an easement?    This cannot be denied ; nor that the latter easement is enjoyed, not by the public at large, but by, a corporation."

This case arose in reference to a steam railroad, and at first an attempt was made to confine its application to these, but in *Craig* v. *Rochester, &c. R. R. Co.* 39 Barb. 494, overruling

the case *Brooklyn, &c. R. R. Co.* v. *Brooklyn City R. R. Co.* 33 Barb. 420, it was held to apply alike to horse railroads. See also 39 N. Y. 407.

"The feature which most widely distinguishes a railroad from an ordinary highway is, that the former is a strict monopoly, excluding all idea of competition." *Davis* v. *Mayor*, &c. of N. Y; 14 N. Y. 506; 33 Am. Dec. 516.

"The uses to which streets in towns and cities may legitimately be put, are greater and more numerous than with respect to ordinary roads or highways in the country." 2 Dillon Mun. Corp. § 544 and note; 1 Redf. Railways, 315 n.; 11 Barb. 414; 12 Iowa, 246.

Where the public have only an easement in a street or highway the use of the street or highway for a steam railroad is an additional burden which cannot be imposed without compensation to the proprietor for such new servitude. Dillon Mun. Corp. 557, and cases cited: Cooley Const. Limitations, 549; Redf. on Railways, § 76, p. 316; 16 N. Y. 97; 25 N. Y. 526; 14 Ohio, 523; 22 Conn. 74; 34 Conn. 579; 20 N. J. Eq. 61; 16 Wis. 640; 3 Foster, 83; 6 Foster, 266; 21 Mo. 580; 9 Ind. 433, 467; 5 Dutcher, 393; 31 Am. Dec. 313; 56 Am. Dec. 396; 136 Mass. and cases cited in the dissenting opinion of ALLEN, J.

*Frank W. Dana and Willard F. Estey*, for defendant.

The city had a right to authorize the company to grade the street. R. S., c. 18 § 75; City ordinances, c. 3, § 5; *Callender* v. *Marsh*, 1 Pick. 417; *Cyr* v. *Dufour*, 68 Maine, 501; *Cool* v. *Crommet*, 13 Maine, 255; *Fitz* v. *Boston*, 4 Cush. 365; Cooley's Const. Lim. 235 *et seq.* Ang. and Ames, Corp. § § 111, 239; *State* v. *Ferguson*, 33 N. H. 430; *Hovey* v. *Mayo*, 43 Maine, 335; *Green* v. *Portland*, 32 Maine, 434.

A horse railroad is not a new use of a way; Cooley's Const. Lim. 682, 687, 700; *Com.* v. *Wilkinson*, 16 Pick. 175; *Murray* v. *Co. Com.* 12 Met. 455; *Benedict* v. *Goit*, 3 Barb. 459; *Wright* v. *Carter*, 27 N. J. 76; *State* v. *Laverack*, 34 N. J. 201; *C. F. &c. Plank Road Co.* v. *Cane*, 2 Ohio (N. S.) 419; *Douglass* v. *Turnpike Co*, 22 Md. 219; Wood's Railway Law, 721, 724; *Elliott* v. *F. and W. R. R. Co.* 32 Conn. 579;

Dillon Mun. Corp. (2 ed.) § 573; *Attorney General v. Metropolitian R. R. Co.* 125 Mass. 515; *Citizens' Coach Co. v. Camden Horse R. R.* 33 N. J. Eq. 267; *Cushing* v. *Boston,* 122 Mass. 175; *Porter* v. *R. R. Co.* 33 Mo. 128; *Hobart v. Milwaukee City R. R. Co.* 27 Wis. 194; *Street Railway* v. *Cumminsville* 14 Ohio St. 523; *Hamilton* v. *N. Y. and Harlem R. Co.* 9 Paige, 170; *Adams* v. *Saratoga and Wash. R. R. Co.* 11 Barb. 414; *Plant* v. *Long Island R. R. Co.* 10 Barb. 26; *Chapman* v. *Albany, &c.* 10 Barb. 360.

EMERY, J. A strip of the plaintiff's land in Auburn, had been lawfully taken by public authority for a public highway. and just compensation had been made to the owner therefor. The defendant company had subsequently constructed a street railroad, (commonly called a "horse railroad") in this highway and over the strip of land, thus taken from the plaintiff's land. Early in 1885, the company lowered the grade of their rails on this strip, whereupon the plaintiff brought this action, alleging said acts of the defendant company to be a trespass on her land.

All these acts of the defendant were within the limits of the highway, and were done under express license from the city council of Auburn, and from the Legislature. They would not therefore constitute any trespass on the plaintiff's land, if such license conferred lawful authority. The plaintiff contends however, that the license invoked in this case, has no validity and confers no authority because it undertakes to make a new and different use of her land, without providing a just compensation therefor.

We do not think the construction and operation of a street railroad in a street, is a new and different use of the land from its use as a highway. The modes of using a highway strictly as a highway are almost innumerable, and they vary and widen with the progress of the community. When a highway is first established in some unfrequented locality, it may exist for a time as a rude road, with a narrow track, and only occasionally used. With the growth of population and business, and the transformation of the lonely neighborhood into a thriving, increasing city, the

highway may also go through the transformations of being turnpiked, planked, macadamized, and paved for its entire width. From bearing an occasional rude cart, it may come to sustain an endless succession of wagons, drays, coaches, omnibuses and other vehicles of travel and traffic. There is a continual march of improvement in streets and in vehicles. It cannot be that the land owner must be compensated anew, at each new improvement in street, or vehicle, or with every increase of traffic. All the land originally taken, was taken for a highway, and for all time, if needed, and the compensation was estimated on that basis. The taking and the payment were once for all. The public, at the first taking, acquired an untrammeled right of way over every part of the land taken, with full right to do all things upon the land to facilitate its use as a highway, and make it sufficient at any time for the increasing need of the public for a highway. There is in such cases no stipulation limiting the public to any particular kind of road or vehicle.

The laying down rails in the street, and the running street cars over them, for the accommodation of persons desiring to travel on the street, is only a later mode of using the land as a way, using it for the very purpose for which it was originally taken. It may be a change in the mode, but it is not a change in the use. The land is still used for a highway. The weight of authority is so manifestly in favor of this proposition, it is unnecessary to cite particular decisions.

Our attention is called to the fact that this defendant company is authorized to use steam as a motor, on this same railroad, and we are cited to decisions of courts, holding that the ordinary steam railroad companies must make additional compensation to land owners — before taking a street for their railroads. The argument is, that however it may be as to horse railroads, steam railroads must make compensation.

We do not think the motor is the criterion. It is rather the use of the street. If the railroad company exclusively occupy the land — shut off the street from it, deprive it of its character of bearing the easement of a street — use it, not for street traffic, but for what is known as railway traffic, the company may

perhaps be said to make a new and different use of the land. But we have no occasion now to express any opinion on that question. This defendant company is using the land as a street. Its railroad is a street railroad. Its cars are used by those who wish to pass from place to place on the street. A change in the motor is not a change in the use.

If public authority can lawfully authorize the construction and operation of a street railway in a public street, without providing for additional compensation to the land owner (as we think it can), it can also lawfully authorize a change of grade for that purpose, without committing a trespass upon the land owner.

The officers of municipalities, charged with the duty of making the streets safe and convenient, for the use of an increasing traffic, have large authority, and wide discretion in all matters of construction and improvement, including grades. It has been held, that the lowering the grade of a street by a person acting under municipal authority, and in good faith, without wantonness, is not a trespass against the land owner. *Hovey* v. *Mayo*, 43 Maine, 332. In this case the lowering of the grade was done under the authority of the city council, and of the commissioner of streets. There is no suggestion of want of good faith.

We think the plaintiff is confined to the remedy provided by statute, § 16 of city charter of Auburn — and § 68, of chap. 18 of R. S. These statute provisions will afford a remedy, if she be entitled to any compensation. She cannot maintain this action of trespass.

*Judgment for defendant.*

Peters, C. J., Walton, Virgin, Libbey and Haskell, JJ., concurred.