## County of Cook v. T. E. Ryan, Administrator of the Estate of Francis R. Murphy, Deceased.

1. COUNTIES—*Audit of Bills, etc.*—Where goods are furnished to a county, bills therefor presented according to law to the county board, and appropriate committees report that, having had the bills under advisement, they recommend the payment of them, and thereupon the county board, in regular session, adopt such reports and order the bills paid, *it was held*, with such orders of the board, no independent proof of the delivery of the goods or of the quantities or prices was necessary. The orders have all the effect of an account stated between individuals.

2. COUNTIES—*Audit of Bills—What Conclusive of.*—An audit of a bill by a county, when the auditors are not fraudulently imposed on and act within their jurisdiction, is undoubtedly conclusive, until in some way reversed, as to the liability of the county for the amount audited. But it is conclusive for nothing more, and this is true of every audit made by county supervisors and town boards of auditors. When the auditors honestly allow a claim, acting within their jurisdiction, and no fraud has been practiced upon them in procuring the allowance, the liability of the municipality is fixed, and the claim is no longer subject to dispute.

3. COUNTIES—*Power to Rescind Acts of Auditing Committee.*—Where a bill for goods furnished has been audited by a municipal corporation it has no power to rescind the audit at a subsequent meeting. Perhaps by virtue of a rule providing that such an action of the board at one meeting might be reconsidered at the next, the board might rescind the audit at the next meeting; but an attempted rescission after the lapse of many months, during which meetings were held every week, is ineffectual.

4. FRAUD—*Finding of Trial Court, When Conclusive.*—The finding of the court, trying the cause without a jury, concludes the Appellate Court upon the question of fraud.

5.  LIMITATIONS—*County Orders.* —The action of the board ordering
the payment of certain bills was more than five years before the com-
mencement of a suit.  *It was held* that if the plaintiff had any case, it was
upon the orders for the payment of his bills, these matters all being in
writing, and if there is any evidence of indebtedness it is in writing, to
which ten years is the limitation under Sec. 16, Ch. 83, R. S.

WATERMAN, J. dissenting.

**Memorandum.**—Assumpsit.   Appeal from the Circuit Court of Cook
County; the Hon. RICHARD S. TUTHILL, Judge, presiding.   Heard in
this court at the October term, 1893, and affirmed.  Opinion filed April
19, 1894.

The statement of facts is contained in the opinion of the
court.

JAMES MAHER, attorney for appellant.

APPELLEE'S BRIEF, RICHARD PRENDERGAST, ATTORNEY.

It can be fairly stated that the weight of authority in and
out of this State, is that the allowance by a county auditing
body under such statutory powers as exist here, of a claim
that might properly be a legal charge against the county—
that is, in a matter that they rightly had jurisdiction to
allow—is conclusive against the county, and can not subse-
quently be rescinded by the board or by its successors in
office, or be collaterally attacked.

In other States this doctrine is fully established.   People
v. Schenectady, 35  Barb. 408; Arthur v. Adam, 49 Miss.
404;  State v. Buffalo Co., 6 Neb. 454.

In Michigan, supervisors have exclusive power to adjust
claims against county.   Endriss v. Chippewa Co., 43  Mich.
317.

To the same effect is People v. Fitzgerald, 54 How.
Pr. 1.

So in Arkansas.   English v. Chicot Co., 26 Ark. 454;
Tiltham v. Same, 26 Ark. 461.

So in Indiana.   McCoy v. Atte, 30 N. E. Rep. 528; State
v. Connor, 5 Blackf. (Ind.) 325; Gaston v. Com'rs, 3 Ind.
497; Board v. La Grange Co., 7 Ind. 6; Snelson v. State, 16
Ind. 29; Com'rs v. Gregory, 42 Ind. 32.

Again in Wisconsin. State v. Supervisors of Crawford Co., 30 Wis. 596.

And in California, New York, Pennsylvania, Ohio, etc. Colusa Co. v. De Jarnett, 55 Cal. 373; McFarland v. McComen, 33 Pac. Rep. 113; People v. Collins, 19 Wend. 56; Brown v. Otoe Co., 6 Neb. 111; Burnett v. Portage, 12 Ohio, 58; Chicago v. Birdsoll, 4 Wend. 455; Northumberland Co. v. Bloom, 3 Watts and Son (Penn.), 542; Ryan v. Dakota Co., 32 Minn. 138; People v. Rensselaer Co., 34 Hun (N. Y.) 236; Cass Co. Com'rs v. R. R. Co., 88 Ind. 199.

MR. JUSTICE GARY DELIVERED THE OPINION OF THE COURT.

This is an action for goods sold and delivered to the county by Francis R. Murphy in his lifetime — the appellee being his administrator. It is unnecessary to refer to the pleadings, as upon the trial it was stipulated, in effect, that the cause should be determined upon the merits, as they might appear from the evidence.

The evidence on the part of the appellee which we regard as controlling the case, is that bills for the goods were rendered to the county by the Chicago Pharmaceutical Company; that Murphy was conducting business under that name; that in the regular order of business, in the mode adopted by the county board, appropriate committees reported that having had the bills under advisement they recommended the payment of them, and thereupon the county board, at regular sessions of the board, adopted such reports, and ordered that the bills be paid.

Among the powers of the county board was "to examine and settle all accounts against the county." Third clause, Sec. 25, Ch. 34, Counties, R. S. 1874. The law contemplated that upon such orders of the county board, the clerk and treasurer of the county would act. Ch. 35 and 36, R. S. 1874. With such orders of the county board, no independent proof of the delivery of the goods, or of quantities or prices was necessary. The orders had, at least, all the effect of an account stated between individuals. "Such an audit, when the auditors are not fraudulently imposed

on and act within their jurisdiction, is undoubtedly con-
clusive, until in some way reversed, as to the liability of the
city for the amount audited, and it can not be collaterally
overhauled or attacked. But it is conclusive for nothing
more, and this is true of every audit made by county super-
visors and town boards of auditors. When the auditors
honestly allow a claim, acting within their jurisdiction, and
no fraud has been practiced upon them in procuring the
allowance, the liability of the municipality is fixed, and the
claim is no longer subject to dispute." These sentences are
quoted from the opinion of the court in Nelson v. Mayor,
etc., of New York, 131 N. Y. 4, where it is true they were
*obiter*, but they express the rule of law accurately. The
rule was followed by the Supreme Court in Fitzgerald v.
Harms, 92 Ill. 372, and recognized by this court in Lund-
berg v. Boldenwick, 35 Ill. App. 79.

Such was the rule enforced in Mayor v. Wright, 2 Porter
(Ala.) 230; Brown v. Inhabitants, etc., 79 Maine, 305; Hall
v. Inhabitants, etc., 116 Mass. 172; all of which also deny
the power of the municipality to rescind the audit at a sub-
sequent meeting. This last position is, so far as we are
advised, nowhere denied, unless in North Carolina. See
Dey v. Lee, 4 Jones' Law, 238. Perhaps by virtue of a rule
of the board, shown by the record, providing that action
of the board at one meeting might be reconsidered at the
next, the board might rescind the audit at the next meet-
ing; but the attempted rescission here, was after the lapse
of many months, during which meetings were held each
week.

The prohibition in Ch. 146 a, R. S., against warrants when
there is no money in the treasury, has no relation to audit-
ing accounts, nor is there any evidence of an excess of in-
debtedness by the county in violation of Sec. 12, Art. 9, of
the constitution.

The record does show that Murphy was in the service of
the county, and the goods which he furnished under his
business name, as a company, he also received for the
county. Certainly that has a bad aspect, but there is in the

record the testimony of a witness, also a servant of the county, and to whom Murphy was subordinate, that he examined the goods as received, and found that all that were charged were received, and charged at low prices.

The finding of the court, trying the cause without a jury, concludes us upon the question of fraud. The action of the board ordering the payment of the bills was all more than five years before the commencement of this suit; but if the appellee has any case, it is upon the allowance of, and the orders for the payment of, his accounts rendered to the county board.

These matters are all in writing, and if there be any evidence of indebtedness, it is in writing, to which ten years is the limitation under Sec. 16, Ch. 83, R. S. 1872.

On the whole case the judgment of the Circuit Court for the appellee is affirmed.

MR. JUSTICE WATERMAN, DISSENTING.

From the bill of particulars filed and evidence introduced by the plaintiff in this case, it appears that, in the years 1886, 1887 and 1888, the county of Cook received from the Chicago Pharmaceutical Company certain drugs and hospital supplies. Bills for such supplies were, from time to time, rendered to the county by said company, the form of the bills being substantially as follows :

COOK COUNTY HOSPITAL

Sanitary Supplies.

Bought of the CHICAGO PHARMACEUTICAL Co.,

Druggists and Importers,

No. 61 Lake Street.

Order book....

Folio....

Shipped....            Represented by A. J. Walker.

B 1089 lb. Sal. Soda, 3 bbls. 105 3½            39.17

COOK Co. HOSPITAL.

Certified correct.

W. J. McGARIGLE, Warden.

The affidavit of A. J. Walker is attached to the various bills; in this affidavit said Walker makes oath that he is

collector for the claimant named in the claim hereto attached, that the several items therein mentioned are just and true, etc., and that there is now due and unpaid to said Chicago Pharmaceutical Co., the sum of (amount of bill).

Some of the bills have on them " Certified correct, H. S. Varnell, Warden," and most of them have thereon,

" O. K.                                " O. K.

   Jno. J. Doherty."                       F. R. Murphy."

McGarigle, Varnell, Dougherty and Murphy, were all in the employment of the county; Dougherty was chief clerk of the County Hospital, and Murphy was druggist at the hospital; in the employment of the county, Dougherty was in the employment of the county and also of Murphy.  On the bill of particulars a claim for $1,000 for the services of said Murphy is made, and it is stated in the bill of particulars that warrants for said services were issued, as well as for drugs and hospital supplies furnished.  It also appeared that a committee of the board of county commissioners, to whom the bills of the Chicago Pharmaceutical Company were presented, recommended their payment, and that such reports were adopted and the bills ordered paid.  No warrants for any of these bills appear to have been issued.  Some months after the passage of the order that the bills be paid, the board of county commissioners rescinded its action approving the bills and directing that they be paid.

The majority of the court are of the opinion that the allowance of these bills by the county board fixes the liability of the county therefor.

As, under the stipulation, all defenses are admissible, we are at liberty to inquire what the evidence is as to such action of the county having been obtained by fraud on the part of Francis R. Murphy, in behalf of whose estate this claim is prosecuted.

What, according to the evidence, was done to induce the board to take the action it did?

*First.*  The board was kept in ignorance of the all-important fact that these bills presented by and in the name

of the Chicago Pharmaceutical Company were really accounts belonging to and for druggists' goods supplied by Francis R. Murphy, the druggist employed, and paid by the county to protect its interests in respect to the matter of the purchase of these very goods.

It does appear that certain members of the board, as individuals, were informed that Francis R. Murphy was doing business as the Chicago Pharmaceutical Company, but it nowhere appears that the board, as a board, had either knowledge or notice of such fact.

*Second.* The board was kept in ignorance of the fact that the " O. K." placed upon these bills and the signature of Francis A. Murphy thereto was the certificate by its trusted employe to the correctness of his own bill for goods furnished apparently by another party.

*Third.* The board was kept ignorant of the fact that John T. Dougherty, whose " O. K." above his signature was also on these bills, while a servant of the county and paid by it, was actually in the employment of Francis R. Murphy, doing business as the Chicago Pharmaceutical Company.

*Fourth.* That Francis R. Murphy was violating the penal statutes of this State by, without warrant, assuming what purported to be a corporate name.

Can any intelligent man, not to say any business man, believe that if these facts had been known, the bill would have been allowed without an examination much more thorough than, in the absence of such extraordinary circumstances so calculated to arouse suspicion, and facts so pregnant with fraud, would have been made?

Can any man truthfully say that if the entire facts had been known, the certificate of W. J. McGarigle and H. S. Varnell and the affidavit of Walker would have been deemed sufficient? Would not, upon the presentation of the facts this record discloses, a most thorough investigation as to the delivery, weight, quality, price and necessity for and of each article have been had?

Finally, is it the law that an allowance of bills by a municipal body, obtained under such circumstances, is binding upon it?

Fraud vitiates all acts.   The county of Cook acts entirely through agents.   If they conspire against it, league to deceive it, it is not bound by what they, for their profit, may by such deception for their gain, induce it to do.   No allowance of any account to Francis R. Murphy was ever knowingly made.   No warrant to *him* ever ordered.

I am also of the opinion that the action of the board in rescinding the order for payment of these bills, deprives the plaintiff of any right to recover by reason of such order of payment.

In Dillon on Municipal Corporations, Sec. 290, it is said: "At any time before the *rights of third persons* have vested, a council or other corporate body may, if consistent with its charter and rules of action, *rescind previous votes and orders.*"

The cases in which such right to rescind has been sustained are numerous.   Among them are Estey et al. v. Starr et al., 56 Vt. 690; Tucker v. The Justices of Iredell County, 13 Iredell (N. C.), 434; Bigelow v. Hillman, 37 Me. 52, 58; Wilmington v. Inhabitants of Harvard, 8 Cushing (Mass.), 66–68; Getchell v. Inhabitants of Wells, 55 Me. 434–438; Huneman et al. v. Inhabitants of Grafton, 10 Metcalf, 454–456.

The right of Murphy to be paid by the county, depended upon his having furnished goods to the county.   He did not supply any goods or do anything upon the strength or faith of the allowance of any of these bills; the allowance, nothing having been done upon the faith thereof, and the rights of no third parties having intervened, is a thing which can be rescinded.

It is not like the case of the awarding of a contract, or the acceptance of a bid.   I can not agree to an affirmance of the judgment rendered in this case.