JAMES TAYLOR, and others, in Equity,

*vs.*

The PORTSMOUTH, KITTERY AND YORK STREET RAILWAY.

EDWARD S. MARSHALL *vs.* SAME.

York.     Opinion January 3, 1898.

*Nuisance. Street Railway. Public Uses. Damages. Way. Corporations. Const. of Maine, Art. IV, § 14. Priv. and Spec. Laws, 1893, c. 582.*

Equity will not enjoin a public nuisance on the application of an individual, either in his own behalf, or in behalf of himself and others of like interest who either do or do not join in the application, unless some special damage to the individual, not suffered in common with the public generally, has been sustained.

The public may regulate by law the use of its public ways in such manner as the legislature may think will best serve the public interest. The kind of use that may be permitted is of no consequence to the abutting land owner. He has been paid his damages for the creation of the way, so that the public

controls its use, and he must take his chance with the rest of the community in which he lives of any inconvenience suffered by reason of the use that the public may see fit to permit.

Where the plaintiffs, as abutting proprietors and owners of the fee in a public way, sought to enjoin the location of a street railway within the limits of a public way, *held;* that the railway company is allowed to share with the public its right of transit over the same, and its location does not create any additional servitude.

*Also;* that the plaintiffs have suffered no damage from the defendant's occupation in common with the public of some share in the easement acquired by it upon the creation of the way; so that they have no cause for complaint on account of the construction of defendant's railroad, not common to the public in general; and, therefore, have suffered no special damage, and can have neither an action at law nor relief in equity.

In considering such use of public ways for surface transit the court *holds* that; it matters not what the motive power used may be, nor whether the transit be the carriage of passengers, of freight, or the transmission of intelligence, by telegraph or telephone, or of water, gas, or sewage. All these are public uses that the public may permit, regardless of the individual, so long as they do not infringe the statute which defines what the public use may be.

Whether a corporation created by special act of the legislature, instead of being organized under the general law as provided in Art. IV, § 14, of the Constitution of Maine, is a violation of the constitution is a question that does not arise in this proceeding. *Held;* that the State only can inquire into the validity of the charter of the defendant company, it appearing to be a de facto corporation, at least, acting under a charter from the legislature.

*Held;* in this case, that the municipal officers had properly approved the location of the street railway.

*Briggs v. Lewiston and Auburn Horse Railroad Co.*, 79 Maine, 363, affirmed.

*Holmes* v. *Corthell*, 80 Maine, 31, affirmed.

ON REPORT.

Bills in equity heard together, upon bills and proofs, in the court below, upon prayers in the bills for a preliminary injunction, to restrain the defendant from constructing its road over and upon the highway leading through York Harbor, where it was alleged the construction of the same would interfere with the plaintiffs' rights as abutting owners, and owners of the fee to the centre of the highway. The preliminary injunction having been denied, the cases were reported to the law court for full and final hearing.

The principal contentions between the parties are stated in the opinion,

*G. M. Seiders and F. V. Chase; Frank D. Marshall; James T. Davidson*, for plaintiffs.

*H. M. Heath and C. L. Andrews*, for defendant.

SITTING: PETERS, C. J., HASKELL, WHITEHOUSE, STROUT, SAVAGE, JJ.

HASKELL, J.   Bill in equity by the abutting owners of land on a public way to enjoin a railway company from use of the way because such use creates a public nuisance.

Nothing is better settled in this state than that equity will not enjoin a public nuisance on the application of an individual, either in his own behalf or in behalf of himself and others of like interest who either do or do not join in the application, unless some special damage to the individual, not suffered in common with the public generally, has been sustained.   Pom. Eq. § 1349, and cases cited. Equity supplements the law, and there is no need of remedy, where there are no damages at law.   *Staples* v. *Dickson*, 88 Maine, 362; *Holmes* v. *Corthell*, 80 Maine, 31.

The bill also seeks an injunction because the plaintiffs are not only abuttors but owners of the fee of the way subjected to the servitude incident to public ways, and that the defendant's use is an additional servitude for which they are entitled to compensation that must first be paid before the servitude may be enjoyed; and this is the main controversy in the cause; for, if the defendant's use of the way be no additional servitude, then the plaintiffs' right in the way and its use are merged with those of the public, and the public alone by its laws must define, control and regulate such use.

What servitude then does the public acquire by the taking of land for a public way?   It is the right of transit for travelers, on foot and in vehicles of all descriptions.   It is the right of transmitting intelligence by letter, message, or other contrivance suited for communication, as by telegraph or telephone.   It is the right to transmit water, gas and sewage for the use of the public.   It is a public use for the convenience of the public, to be moulded and applied as public necessity or convenience may demand and as the methods of life and communication may from time to time require.

Society changes and new conditions attach themselves. The change evolves new ways of doing things, new methods of communication, new inventions for travel. When the way is constructed the land owner has his compensation, not only for the land taken, but for the damages sustained, although usually benefits are conferred rather than injury inflicted. These damages are assessed as compensation for a surrender of his land to the public use for travel and transit, not only by the methods then applied, and for the volume then existing, but for all time and for such future use as the exigencies of the time may develop.

When the way has been created, the public controls its use, and regulates its repair by laws that the legislature shall enact. Under these laws the use must be governed, for the people have a right to say what use will best subserve their interests. They have now said that ways shall be maintained "so as to be safe and convenient for travelers with horses, teams and carriages." That is now the criterion, and a use that infringes upon that rule becomes an unlawful use, and may be prohibited by public prosecution. That rule may be changed, for the public, by law, may regulate the use of its public ways in such manner as the legislature may think will best serve the public interest.

This doctrine allows the public to control the use of public ways for travel and communication, as it may be pleased, from time to time, to do. The kind of use that may be permitted is of no consequence to the abuttor. He must take his chance with the rest of the community in which he lives. Some cases may seem to work hardship, but it is better so, than to embarrass the convenience of the people, and cripple and annoy enterprises which the present and future may recognize as necessary for the good and happiness of society.

No matter whether the way be used by the lone traveler on foot or on his wheel, by the two-horse chaise or four-wheeled carriage, by the dray, cart or coach, or by cars that may be permitted to run in the street, whether propelled by beast, steam, electricity or any other agency that may be discovered suitable for the purpose. No matter whether the vehicle carries passengers or freight, or

passes intelligence along its contrivance. All these are public uses, and so long as they do not infringe the laws that regulate the use of highways, they cannot be prohibited either by the individual or public prosecutor. Ways must be " safe and convenient." When they are not, by reason of any incumbrance or permitted use, then ample remedy may be had by public action, and such incumbrance or use may be removed or prohibited.

The servitude complained of in this cause, therefore, is a public servitude and lawful, so long as it does not infringe the laws of the state regulating the use of ways. It gains no hold upon the soil of itself, but is allowed a share of the public use. Should that use be extinguished, its rights would be extinguished also. It must exist or fall with the servitude of the public, otherwise the doctrines of this opinion would be illogical. If it gained any vested right in the soil that the public could not extinguish, then, manifestly it has created an additional servitude, and taken land without compensation to the owner.

These doctrines have been discussed in the numerous courts of this country with varied results. It will not be profitable to review them, for we think best to declare a doctrine best suited to the convenience of our people and most consonant with the laws under which we live. We have persistently maintained the right of "free fishing and fowling," free and unobstructed navigation of our rivers, the free taking of ice upon them, the right of eminent domain over and in the waters of great ponds, and we now assert the right of the people to control the use of their public ways as shall best meet their necessities, without vexation from the land owner, whenever growth and discovery show the convenience of applying new methods for public transit. Let a public way once constructed be free for the public use and control as it may choose. Let it be free as the ocean is free, as our rivers are free, and as our great ponds and lakes are free for the use of all the people.

If the reverse of this doctrine be held, the numerous street railways now operating in our state would be crippled, if not destroyed. If every abuttor could enjoin their operation unless his damages were paid, there would be no end of litigation and confusion.

Moreover, it is now too late to invoke such doctrine. We have already decided that a street railway, propelled by electricity, creates no additional servitude. *Briggs* v. *Lewiston and Auburn Horse Railroad Co.*, 79 Maine, 363. Relying upon that doctrine, electricity has become the principal motor for all our street railroads, and it would be unjust to now overturn it, if we were inclined so to do. On the contrary, we deem it best, and most consistent with our laws and polity to affirm it, and further that neither motor, nor kind of traffic to be engaged in make any difference, so long as the use does not violate the requirements of the statute, concerning which we are not called upon to decide at the instance of an individual.

Now it may be said that the location of a street railway, by authority of the legislature, should give it a vested right to remain after the discontinuance of the way. But it must be remembered the legislature only gave a right to share the public easement, and when that shall be extinguished, all the granted right will be extinguished. It may be that the act of the legislature granting a share in the easement gives a vested right therein, that can only be extinguished by the consent of the grantee, or by authority of the legislature granting it. Of this we have no occasion to decide.

The doctrine of this opinion must not be extended too far. Perhaps the fair inference will be that the taking of land for a way only contemplated surface transit. We do not decide otherwise. When elevated systems of transit are introduced, the permanence of their structure and the annoyance and injury may, perhaps, seem fairly to contemplate a further servitude. Of this, too, we have no occasion to decide.

It must be remembered that the use of ways for street car transit can be enjoyed only by the act of the people themselves. Their ballots control, and if they share their use with others who aid in serving the use common to both, it is a public use after all. The public grant the privilege and control its enjoyment. The exercise of such power best serves our people, who are intelligent enough to understand their necessities and comforts.

But the plaintiffs say that the charter of defendant company is void for constitutional reasons. This contention is not open in this cause. The defendant is acting under a charter from the legislature. It is a de facto corporation at least. The State only can inquire into the validity of the charter. But if the contention were open to the plaintiffs, it could do them no good. They have impleaded the defendant as a corporation, and joined no other persons. If it has no corporate existence, who shall be enjoined? The only prayer in the bill is that defendant corporation be enjoined. If there be no corporation, how can it be enjoined? Suppose plaintiffs had sued a dead man, could they have relief?

It is also contended that the proper approval of the location of the road has not been obtained from the municipal officers of the town. We think the evidence shows the reverse. There is no occasion to review it.

How, then, does the cause stand? The plaintiffs as abuttors and owners of the fee of the way, have suffered no damage from the defendant's occupation in common with the public of some share in the easement acquired by it upon the creation of the way, so that they have no cause for complaint on account of the construction of defendant's railroad, not common to the public in general, and, therefore, have suffered no special damage, and can have neither an action at law or relief in equity.

*Bill dismissed with costs.*