Robert John Weber MacKENNA et al.

v.

INHABITANTS OF the TOWN OF SEARSMONT.

Supreme Judicial Court of Maine.

Jan. 2, 1976.

Eaton, Glass, Marsano & Hammond, by Francis G. Marsano, Belfast, for plaintiffs.

Sanborn, Moreshead & Schade by Richard B. Sanborn, Augusta, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

POMEROY, Justice.

This case is before us on appeal by the plaintiffs from the denial of a complaint for an injunction.[1]

By their action the plaintiffs sought to enjoin the Town of Searsmont from using the road which runs between the MacKenna property abutting it on the south and the Williams property abutting it on the north, as an access road to a planned town dump.

By agreement of the parties the matter was referred to a referee under the provisions of Rule 53(b)(1), M.R.Civ.P.

After hearing, the referee reported in favor of the Town.

The report was accepted over objections of plaintiffs.

This timely appeal was entered.

We deny the appeal.

The referee made the following findings:

(1) The decisive issue is whether the Crie Road (the road in question) so-called, in Searsmont, is a town road. The Crie Road is a strip of land bounded by stone walls, approximately 50 feet in width, running easterly from Marriner Road to the Searsmont-Belmont line.

(2) In my opinion the Crie Road was established as a town road by prescription.

(3) From before 1827 there has been a road at the location of the Crie Road from what is now Route #173 to the Belmont line.

(4) For over a century, until 1942–43, the Crie Road, I find, was in continuous use as a town road without question.

(5) The Crie Road was not discontinued as I read the evidence as contended by the plaintiffs at the 1943 town meeting.

(6) Although the use of the road diminished over the years to a use chiefly for lumbering, the town did not, as I see it, abandon its rights therein. The road remained a town road from Route #173 to the Belmont line.

Appellants concede that the findings of the referee were not *"clearly erroneous."* M.R.Civ.P., Rule 53(e)(2). However, they argue the referee committed certain errors of law in resolving the dispute as he did.

The crux of appellants' argument is that a town road is strictly a creature of statute and as such it can be created prescriptively only if it is first *"taken"* or *"laid out"* by the town and then used in a manner adverse to the servient owner for the prescriptive period. In other words, a location *de facto* must first be established by the town, which location must then be utilized by the town for the required number of years until it ripens into a location *de jure*.

Since, in appellants' view, there was no *de facto* taking proven in this case, it was error to conclude that the Crie Road became a town road by prescription.

 We do not agree that a *de facto* taking is a necessary prerequisite to the creation of a town road by prescription. While it is true, as appellants point out, that a town way is in some respects distin-

1. The complaint also demanded damages from the Town.

guishable from a public way,[2] it is not true that the former can only be created by formal dedication or by a laying out of the boundaries followed by use of the road for the required period.

A town way may be created by prescription in the same manner as a public way.[3]

The cases which have dealt with the issue have treated the laying out of a *de facto* road and the subsequent ripening into a *de jure* town way as one of several rather than as the exclusive method of establishing a town way. *Willey v. City of Ellsworth,* 64 Me. 57 (1874); *State v. Bunker,* 59 Me. 366 (1871); *Mayberry v. Inhabitants of Standish,* 56 Me. 342 (1868); *Estes v. Inhabitants of Troy,* 5 Me. 368 (1828).

In *Bunker* it was said that:

". . . the existence of a town way may be established by evidence other than the record of the laying out of the same by the municipal officers. . . . Whether the road thus proved to exist is an highway or a town way may not always be so easy of ascertainment but that does not affect the question. Either class of ways may be shown to exist by prescription." 59 Me. at 370–371.

We read the above language as a clear indication it is already established that a town road can be created by adverse user alone. Thus, even if we were to accept appellants' argument that no *de facto* taking or dedication was proved in this case, it would not alter our decision since no such taking need have been shown.[4]

For their final point, appellants contend that even if the Crie Road was lawfully established as a town way by prescription, its use in recent years has been limited to lumbering operations. The proposed use of the road for ingress and egress to a public dump, they say, constitutes an impermissible enlargement of that use.

■ Appellants are correct in their assertion that an easement acquired by prescription is limited by the character of the prescriptive use. As the Court said in *Pillsbury v. Brown,* 82 Me. 450, 454, 19 A. 858 (1890).

"[I]t is generally true that, when an easement of any kind is obtained by adverse use alone, its extent must be measured by its use." See also, *City of Rockland v. Johnson,* Me., 267 A.2d 382 (1970).

■ When, however, the easement so acquired is a town or public way[5] its use is not restricted by the type or extent of traf-

2. *See Bigelow v. Hillman,* 37 Me. 52 (1854).

3. We recently reviewed the requirements for creation of an easement by prescription in *Fitanides v. Holman,* Me., 310 A.2d 65 (1973). We said in that case:
"'A prescriptive easement is created only by continuous use for at least 20 years under a claim of right adverse to the owner, with his knowledge and acquiescence, or by a use so open, notorious, visible, and uninterrupted that knowledge and acquiescence will be presumed. . . .'" 310 A.2d at 68. (Quoting from *Dartnell v. Bidwell,* 115 Me. 227, 230, 98 A. 743, 744 (1916).

4. The evidence before the referee was sufficient to permit him to conclude that a *de facto* "laying out" or "taking" was established. The referee found that the now-disputed road was included in seven town and county maps and private deeds beginning

early in the nineteenth century. We find this to be persuasive evidence that the Crie Road was "laid out" by the Town of Searsmont some time before 1827.

5. It has been said with regard to the distinctions between a town and a public way that, "These distinctions apply more particularly to the manner of establishing and discontinuing ways, than to their use when established. Thus when a way is once opened, whether it be a public highway or a town way, it is alike subject to the use of the whole public. All citizens having occasion, may lawfully pass thereon, irrespective of the particular authority under which it has its origin." *Bigelow v. Hillman,* supra, 37 Me. at 56. We shall, therefore, treat the rules governing the extent to which the general public may utilize a public way as applying as well to questions of the useage of a town way.

fic which utilized the road during the prescriptive period. Once the way has been established any use may be permitted thereon which is not inconsistent with a public way.[6] *Taylor v. Portsmouth, K. & Y. St. Ry.*, 91 Me. 193, 39 A. 560 (1898); *Briggs v. L. & A. Horse R.R. Co.,* supra.

As the *Taylor* Court so eloquently put it:

"It [a public way] is a public use for the convenience of the public, to be moulded and applied as public necessity or convenience may demand, and as the methods of life and communication may from time to time require.

\* \* \* \* \* \*

"[W]e now assert the right of the people to control the use of their public ways as shall best meet their necessities, without vexation from the land owner, whenever growth and discovery show the convenience of applying new methods for public transit. Let a public way once constructed be free for the public use and control as it may choose. Let it be free as the ocean is free, as our rivers are free, and as our great ponds and lakes are free, for the use of all the people." 91 Me. at 195, 197, 39 A. at 560, 561.

Applying the above principles to the case before us, it becomes obvious that the Town of Searsmont was entirely within its rights when it made plans to use the Crie Road for access to the dump and entered upon and improved the road in furtherance of those plans. The injunction and damages were properly denied.

The entry must be,

Appeal denied.

All Justices concurring.

---

6. "The modes of using a highway strictly as a highway are almost innumerable, and they vary and widen with the progress of the community. When a highway is first established in some unfrequented locality, it may exist for a time as a rude road, with a narrow track, and only occasionally used. With the growth of population and business, and the transformation of the lonely neighborhood into a thriving, increasing city, the highway may also go through the transformations of being turnpiked, planked, macadamized, and paved for its entire width. From bearing an occasional rude cart, it may come to sustain an endless succession of wagons, drays, coaches, omnibuses, and other vehicles of travel and traffic. There is a continual march of improvement in streets and in vehicles. It cannot be that the land owner must be compensated anew, at each new improvement in street, or vehicle, or with every increase of traffic." *Briggs v. L. & A. Horse R.R. Co.,* 79 Me. 363, 366, 10 A. 47, 48 (1887).