## WILLIAMS v. CITY ELECTRIC STREET RY. Co.

*(Circuit Court, E. D. Arkansas. March 26, 1890.)*

1. STREET RAILROADS.
   The difference between railroads for general traffic and street railroads consists in their use, and not in their motive power. A railroad, the rails of which are laid to conform to the grade and surface of the street, and which is otherwise constructed so that the public is not excluded from the use of any part of the street as a public way; which runs at a moderate rate of speed, compared to the speed of traffic railroads; which carries no freight, but only passengers, from one part of a thickly populated district to another in a town or city, and its suburbs, and for that purpose runs its cars at short intervals, stopping at the street crossings to receive and discharge its passengers,—is a street railroad, whether the cars are propelled by animal or mechanical power.

2. SAME—MOTIVE POWER—MUNICIPAL CORPORATIONS.
   Where a city is authorized by its charter to contract for the construction of street railroads, it may authorize such railroads to be operated by animal or mechanical power.

3. SAME—ADDITIONAL SERVITUDE.
   The operation of a street railroad by mechanical power, when authorized by law, on a public street, is not an additional servitude or burden on land already dedicated or condemned to the use of a public street, and is therefore not a taking of private property, but is a modern and improved use, only, of the street as a public highway, and affords to the owner of the abutting property, though he may own the fee of the street, no legal ground of complaint.

*(Syllabus by the Court.)*

In Equity. On bill for an injunction against the operation of a street railroad with steam motors.

*Sam W. Williams*, for plaintiff.

*John B. Jones* and *John M. Moore*, for defendant.

CALDWELL, J. A statute of the state of Arkansas providing for the organization and defining the powers of municipal corporations provides that—

"Sec. 754. They shall have power to provide for lighting the streets and alleys of the city by gas or otherwise, and to authorize the construction of gas-works and of street railroads. Sec. 755. For the purpose of providing water, gas, or street railroads, the mayor and council may contract with any person or company to construct and operate the same, and may grant to such person or company, for the time which may be agreed upon, the exclusive privilege of using the streets and alleys of such city for such purpose or purposes." Mansf. Dig.

On the 6th day of December, 1887, the city of Little Rock, acting on the authority of the above-quoted sections of its charter, entered into a contract, in due form, with the defendant, by the terms of which the defendant was granted the right to construct, maintain, and operate, on

certain named streets in the city, "a street railway, with iron or steel rails, to be worked by electric or steam motors, or by cable, or by other power adapted to operating street railways." In pursuance of this contract, the defendant constructed, and is operating by use of steam motors, a street railroad, on some of the streets embraced in its contract. The plaintiff owns a lot, with a dwelling-house thereon, on the southeast corner of block 103; and the defendant's road runs around the corner of the block, and its track is in or near the center of the streets in front and on the side of the plaintiff's lot. The plaintiff alleges that the defendant's engines emit smoke, gas, and steam, and produce loud noises, to a degree that renders them a public nuisance; that they render the approach to plaintiff's premises unsafe; and that by reason thereof the plaintiff's property has been damaged in a large sum. The prayer of the bill is "that, unless defendant shall speedily assess and pay damage, and condemn said lot to public use, that it be enjoined from running its trains by steam along said streets, and that said nuisance be abated, and, until defendant shall so condemn and compensate plaintiff, that it be restrained from using said track to run cars over it by any sort of power, or means of locomotion." The plaintiff's contention is that the sections of Mansfield's Digest above quoted must be restricted in their operation to street railroads propelled by animal power, and that street railroads propelled by steam, or other mechanical power, fall within the following provisions of Mansfield's Digest, in the chapter entitled "Railroads:"

"Sec. 5468. Any right of way heretofore granted by the city council of any city of the first or second-class, or the town council of any incorporated town, to any railroad company, through the streets of such city or town, with the right to establish and maintain depots and other improvements, and facilities necessary thereto, shall be valid and binding. Sec. 5469. The city council of any city of the first or second class, and the town council of any incorporated town, shall hereafter have power to grant to any railroad company the right of way through the streets of such city or town, with the right to establish and maintain depots, and other necessary improvements, in connection therewith. Sec. 5470. If any property is injured thereby, the railroad company shall be liable for such damage, and the same shall be assessed in the manner provided by law for assessing damages for the appropriation of the right of way through lands. Sec. 5471. It shall require the written consent of two-thirds of the property in value on said street or streets; and, to arrive at said value, the last assessment of said real estate on said street or streets shall determine the value of each separate lot or parcel of land thereon. Act March 1, 1883."

The difference between street railroads and railroads for general traffic is well understood. The difference consists in their use, and not in their motive power. A railroad, the rails of which are laid to conform to the grade and surface of the street, and which is otherwise constructed so that the public is not excluded from the use of any part of the street as a public way; which runs at a moderate rate of speed, compared to the speed of traffic railroads; which carries no freight, but only passengers, from one part of a thickly populated district to another, in a town or city and its suburbs, and for that purpose runs its cars at short intervals,

stopping at the street crossings to receive and discharge its passengers,—is a street railroad, whether the cars are propelled by animal or mechanical power. The propelling power of such a road may be animal, steam, electricity, cable, fireless engines, or compressed air; all of which motors have been, and are now, in use for the purpose of propelling street-cars. Encyclop. Britannica, (9th Ed.) tit. "Tramway." Doubtless, other methods of propelling the cars of street railroads will be discovered and applied. The legislature having empowered the city to authorize the construction of street railroads, without qualification or restriction as to the motive power to be used on such roads, the city had the undoubted right to authorize animal or mechanical power to be used as motors on such roads. Sections 5468–5471, Mansf. Dig., relate to railroads for general traffic, and not to street railroads, whether propelled by animal or mechanical power. It would be a useless consumption of time to cite authorities to show that it would be competent for the city, under its charter, to authorize the construction and operation, on the streets of the city, of a street railroad propelled by animal power, without providing for compensation to the abutting lot-owners; but the learned counsel for the plaintiff insists that the rule is different where the propelling power is steam. The distinction attempted to be drawn between animal and mechanical power, as applied to street railroads, is not sound. The motor is not the criterion. It is the use of the street, and the mode of that use. A street railroad propelled by animal power might be so constructed and operated as to be a public nuisance, and render its owners liable to those injured by its improper construction and operation. The same is true of a street railroad operated by mechanical power. It may be so constructed and operated as to be a public nuisance, but the use of steam on such a railroad, when authorized by law, does not *per se* make it a nuisance, or entitle the owners of the abutting property to compensation, though the fee of the street is vested in them. It is common knowledge that steam motors, for operating street railroads, are now constructed to emit so little gas, steam, or smoke, and make so little noise, that they do not constitute any reasonable ground of complaint to passengers or the public. They can be stopped and started as quickly and as safely as horse-cars, and in some respects can be operated with greater accuracy and precision. Such motors are in use in cities and their suburbs in this country and in England. Encyclop. Britannica, (9th Ed.)

The operation of a street railroad by such steam motors, when authorized by law, on a public street, is not an additional servitude or burden on the land already dedicated or condemned to the use of a public street, and is therefore not a taking of private property, but is a modern and improved use, only, of the street, as public way, and affords to the abutting property owner, though he may own the fee of the street, no legal ground of complaint. *Briggs* v. *Railroad Co.*, 79 Me. 363, 10 Atl. Rep. 47; *Newell* v. *Railway Co.*, 27 N. W. Rep. 839; *People* v. *Kerr*, 27 N. Y. 204. But a steam motor may be of such construction, or operated in such a way as to create a public nuisance to the injury of the owners of abutting property; and where that is the case the legislative authority

to construct the road will be no justification of the nuisance. If, however, the defendant's road is operated by the use of the improved steam motors generally used on street railroads, and the emission of smoke, gas, and steam, and the noise produced by blast, are no greater than necessarily attend the operation of such motors supplied with the improved appliances and contrivances in common use, then the plaintiff has no ground of complaint at law or in equity. Whether the defendant's road is or not, so operated, need not be decided, because, in any event, the plaintiff, on the facts of the case, is not entitled to an injunction, but her remedy, if any she has, is at law. *Osborne* v. *Railroad Co.*, 35 Fed. Rep. 84, 37 Fed. Rep. 830. The injunction is refused, and the bill dismissed, without prejudice to the plaintiff's right to sue at law.