WALKER et al. v. CITY OF DENVER et al.

(Circuit Court of Appeals, Eighth Circuit. October 26, 1896.)

No. 736.

RAILROAD COMPANIES—CHANGE OF GAUGE IN STREETS—CITY ORDINANCES.

A railroad company authorized by its charter to build a "three-feet, standard narrow-gauge railroad" cannot broaden its tracks to the standard gauge without the consent of a city through whose streets the tracks are laid, even though the city ordinance granting the use of such streets to the company did not specify any gauge. The charter and ordinance should be construed together.

**Appeal from the Circuit Court of the United States for the District of Colorado.**

This is a bill brought by Aldace F. Walker and John J. McCook, as receivers of the Atchison, Topeka & Santa Fé Railroad Company, the appellants, against the city of Denver, Marion D. Van Horn, as mayor, and Thomas Foulks, as street commissioner, of the city, appellees, to enjoin the appellees from removing or interfering with a railroad track on Evans street, in the city, which had been converted from a narrow to a standard gauge railroad track by the appellants, and was being used by them for the purpose of operating a standard-gauge railroad within the city limits. The appellants rest their right to the injunction upon the following facts: On the 16th day of November, 1880, the Denver Circle Railroad Company was incorporated under the laws of the state of Colorado. The charter of the company defines its objects and purposes as follows: "The objects for which our said company is formed and incorporated are for the purpose of locating, constructing, owning, operating, and maintaining a single or double track, three-feet, standard narrow-gauge railroad, with all the necessary side tracks, switches, and turnouts from and in the city of Denver, in the county of Arapahoe and state of Colorado; thence to a point outside the limits of the said city of Denver, and within five miles of the crossing of Lawrence and Sixteenth streets, in said city of Denver; thence, over the most practicable route as shall be located around said city of Denver, within five miles from the crossing of said Lawrence and Sixteenth streets, to an intersection with said route at a point so as to form a continuous belt or track of railroad around said city of Denver, with permission to locate, construct, and operate branch lines of railroad from and to connections with the main line around said city of Denver; and with the further privilege of constructing, maintaining, and operating a railroad of said standard gauge (three feet) to connections with, and to be a part of, said main line, through said city of Denver, and through, along, over, and across the streets and alleys of said city of Denver, in compliance with the ordinances of said city of Denver, and to build all depots, station houses, shops, and other buildings necessary for the operation of said railroad and branches."

On the 28th day of January, 1881, the city of Denver passed an ordinance, the provisions of which material to this case are as follows:

"Be it enacted by the city council of the city of Denver:

"Section 1. That the Denver Circle Railroad Company be and the same is hereby authorized to locate, construct, maintain and operate a single and double track railway and telegraph line, with all necessary side tracks, turnouts and switches along the following route, when the same runs across public streets, public grounds, highways or alleys, provided that no side tracks, switches or turnouts shall be laid on the street crossings. * * *

"Sec. 7. That said company may construct on and over such other parts of said line as they may now own or may hereafter acquire, as many tracks, turnouts, switches, depots, warehouses, machine shops and other structures for railroad purposes as it may deem proper and expedient, provided that the right of way herein described shall be used for the purposes herein set forth and none other, and the said company shall not grant to any other railroad company the right to use any part of said right of way.

"Sec. 9. That said company, its successors or assigns, are authorized to operate said railroad by steam power. The privileges hereby granted, however, shall be enjoyed, subject to all general ordinances that now are or may hereafter be in force concerning railroads in the city of Denver."

Acting under its charter and the city ordinances, the Denver Circle Railroad Company, in 1881 and 1882, built a single narrow-gauge track railroad on Evans and other streets in the city, which was operated by it until June, 1887, when the same was sold at a foreclosure sale, and purchased by the Denver & Santa Fé Railway Company, a leased line of the Atchison, Topeka & Santa Fé Railroad Company; and, when the appellants were appointed receivers of the Atchison, Topeka & Santa Fé Railroad Company, this leased line came into their possession, management, and control, and was operated by them as a part of that system. Afterwards, the appellants, as receivers, desiring to operate that part of the Denver Circle Line on Evans street as a

standard-gauge road, proceeded to lay down on that street a third rail, thus making a standard-gauge track over which they ran their standard-gauge equipment used on the Atchison, Topeka & Santa Fé System. The appellees, in their official capacity, being about to take up this third rail, and stop the appellants from operating a standard-gauge railroad on Evans street, this bill was filed to enjoin them from so doing. The lower court denied the injunction, and dismissed the bill.

Charles E. Gast, for appellants.

F. A. Williams (G. D. Richmond on brief), for appellees.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The charter of the Denver Circle Railroad Company fixed the gauge of its road at three feet. After the appellants came into possession and control of the road, they proceeded, without the consent of the city, to broaden this 3-feet gauge to the standard railroad gauge of 4 feet 8½ inches, by laying down a third rail. Having in this way converted this narrow-gauge into a standard-gauge road, they proceeded to operate it as a standard-gauge road by running over it their standard-gauge rolling stock used on their main line.

The single question presented by the record is whether the appellants, without the consent of the city, could broaden the 3-feet gauge fixed by the charter under which the road was built to a standard-gauge, and thereafter operate it as a standard-gauge road, in connection with and as a part of their through line to Pueblo. The charter of the Denver Circle Railroad Company defines its corporate powers, and not the city ordinance licensing it to build its road in the city. Its charter emanates from the state, and not from the city. Chicago City Ry. Co. v. People, 73 Ill. 541, 548. The company cannot disregard the limitations, express or implied, imposed upon it by its charter. That authorized the construction of "a single or double track, three-feet, standard narrow-gauge railroad." The company was not authorized to construct a road of any different gauge, and, by implication, it was prohibited from doing so. The rights granted by the ordinance of the city to the company to construct "and operate a single and double track railway" empowered it to construct and operate the kind of a railway it was authorized to build and operate under its charter, and no other. The charter of the company must be read into the ordinance, and the two construed as one instrument. So construed, the ordinance limited the gauge of the road the company was authorized to build and operate to three feet. The company, therefore, acquired no right or authority from the ordinance to broaden the gauge of its road, and could not lawfully do so without an amendment to its charter, and a further grant or license from the city. Ordinances authorizing obstructions upon the streets of a city, which would otherwise be nuisances, are strictly construed, and must be closely pursued. Any substantial variation from the terms of the grant or license is ultra vires. 2 Dill. Mun. Corp. § 657. Such grants are construed most favorably to the public where there exists a reasonable doubt as to the extent of the privileges conferred.

Thomp. Corp. § 5345. If the company or its successors can convert one of the three-feet tracks it is authorized to build and operate into a standard gauge, it can do the same with the other, and thus appropriate to the use of its tracks three feet five inches more of the street than its charter and the ordinance authorize. More than this, if the claim of the appellants is well founded, they can convert the three-feet gauge of both tracks into broad-gauge tracks, and occupy still more of the streets, without any further grant or license from the city.

In the view we take of the case, we do not find it necessary to consider the question whether the charter contemplates the construction of a street railroad or a railroad for general traffic. Williams v. City Electric Ry. Co., 41 Fed. 557. The charter is for "a continuous belt or track around said city of Denver," "within five miles of the crossing of Lawrence and Sixteenth streets, in said city." Under these provisions of the charter, the road cannot be extended beyond the suburbs of the city; and this fact, together with the gauge of the road, indicates that the road is to be used exclusively for local purposes, and not become a part of a great line of road of standard gauge employed in the transportation of freight and passengers throughout the country. Under the charter and the city ordinance, the gauge of the road cannot exceed three feet, no matter what may be the character of the traffic over it. The appellants have no more right under the charter to broaden the gauge of the road than they have to build a standard-gauge road from Denver to Pueblo. The charter constitutes the index to the objects for which the corporation was created, and to the powers with which it has been endowed. Thomp. Corp. § 5639. The change of the gauge and the change of the use of the road by the appellants were a new burden put upon the street without authority. It was the creation of a public nuisance, which it was the right and the duty of the city to abate. The decree of the circuit court is affirmed.