1997 ME 151

**Dora KING**

v.

**TOWN OF MONMOUTH, et al.**

Supreme Judicial Court of Maine.

Argued April 9, 1997.

Decided July 18, 1997.

Jed Davis (orally), Linda Christ, Jim Mitchell and Jed Davis, P.A., Augusta, for plaintiff.

Michael E. Saucier (orally), Thompson & Bowie, Portland, for defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

LIPEZ, Justice.

[¶ 1] Dora King appeals from the judgment entered in the Superior Court (Kennebec County) pursuant to two summary judgments (*Alexander*, J., and *Mills*, J.), a judgment as a matter of law (*Calkins*, J.), and a non-jury trial (*Calkins*, J.), in favor of the Town of Monmouth, and certain officials and employees on claims that they caused damage to King and her property. King cites numerous errors in the rulings. Finding none, we affirm the judgment.

I.

[¶ 2] This case arises from disagreements between King and the Town provoked by the effects of the Town's reconstruction of Highland Terrace Road in 1989, and of other related and unrelated construction projects, on her three properties in Monmouth, Lots 28 and 29 and the Main Street Lot. In 1965 King and her late husband purchased Lot 28, on which her in-laws had lived since 1932 and which remains her primary residence. They purchased the Main Street Lot in the late 1960s and Lot 29 in 1974. A deteriorated carriage house that has not been used in a number of years stands on Lot 29. The Highland Terrace Road abuts both Lots 28 and 29, running north and south on the eastern boundary of Lot 28 and forking at that lot's southeast corner, where it forms a loop; one branch continues south to border the western side of Lot 29, and the other branch turns right around the southeast corner of Lot 28 and forms the lot's southern boundary before looping again to the left. At the northwest corner of Lot 29 (across from the southeastern corner of Lot 28) the road rejoins itself, completing the loop.

[¶ 3] In the late 1980s, the Town began to plan for the reconstruction of the Highland Terrace Road, and alerted King and her neighbors of its intentions. King attended public meetings about the project held by the Town in February and October of 1988. At the latter meeting the Town's lawyer asked those present to sign forms giving the Town permission to conduct the reconstruction. King refused to sign. In a letter to King's attorney, the Town's attorney stated that the Town had no plans to expand its right-of-way to 33 feet during the reconstruction, and asked for permission to go beyond a width of

20 feet to perform routine cut and fill aspects of the reconstruction at the side of the road abutting her properties. Another of King's attorneys conceded to the Town's attorney that the Town had a 20–foot right-of-way over the road.

[¶ 4] In April 1989 King met with the Town selectmen and asked them to put in writing their plans with regard to her property. According to King they refused. The month before they had responded to King's allegations that the Town already had done permanent damage to over half of her property[1] with a letter stating that the Town believed "no permanent damage has ever been done to your property," and that her requests for information about future Town plans "are so ambiguous that any specific information is impossible.... We shall inform the Contractor to avoid your property outside the Town's legal right of way [during the road reconstruction]."

[¶ 5] Reconstruction of Highland Terrace Road began in June 1989. That month King filed a complaint in the Superior Court, including a request for injunctive relief. The court issued a temporary restraining order to prohibit the Town from doing road work outside the 20–foot Highland Terrace right-of-way abutting Lot 28. Claiming that the Town violated the order, King filed a motion to show cause which resulted in the court's issuance of a second order enjoining the Town from

> entering upon, taking, cutting, filling or otherwise engaging in any road construction which extends more than ten feet from the centerline of the right-of-way toward Plaintiff's contiguous personal residential parcel on which her home is located or which results in any further entry, taking, cutting, filling or destruction to any vegetation, rockwall, monument or ornament contiguous to the aforesaid residential parcel of Plaintiff.

King testified that despite the second order, the Town continued to do work in an area beyond the limits set by the court. The reconstruction was completed with the paving of the Highland Terrace Road in September 1989.

[¶ 6] King's amended complaint, filed in July 1991, states 25 claims against the Town and eight individual officials and employees.[2] Many of those claims were disposed of prior to the trial.[3] The evidence adduced at the

---

1. King's claims in this lawsuit are based in part on allegations of property damage due to other construction projects conducted by the Town. King alleges that the Town damaged Lot 28 in the mid– to late–1970s, first by digging a drainage channel which it later filled in, and then by excavating the lawn to install a concrete culvert, all without her permission; in 1980 by removing and replacing granite blocks from a retaining wall, thereby altering the wall's distinctive character; and in the late 1980s by plowing snow in such a manner as to destroy a rose hedge that her daughter had planted on the lot. King claims that the Town damaged Lot 29 in 1975 by dumping construction materials on it and putting fill into the lot's old foundation; in 1977 by installing a culvert that resulted in water flowing in such a way as to kill trees on the lot; and in 1980 by allowing a sub-contractor building a sidewalk to dump debris there. King also asserts that the Town damaged the Main Street Lot in 1988 by piling debris there during the construction of a nearby sidewalk, and by chopping up a strip of land on the lot to construct a sidewalk there, plans that were later abandoned; and in 1990 when reconstruction of Main Street forced water to drain across the lot and caused structural damage to an uninhabitable building on the lot.

2. The counts are for injunctive relief (Count I); real action as to Lots 28 & 29(II) and the Main Street Lot (XXI); common law trespass on Lots 28 & 29 (III) and the Main Street Lot (XVIII); statutory trespass pursuant to 14 M.R.S.A. §§ 7552, 7555 on Lots 28 & 29 (IV & V) and the Main Street Lot (XIX & XX); takings pursuant to the Maine and United States constitutions of Lots 28 & 29 (VI) and the Main Street Lot (XXII); attempted assault (VII); malicious prosecution (VIII & XII); malicious use of process (IX & XIII); conversion (X); false arrest (XIV); federal civil rights deprivations under color of law, 42 U.S.C.A. §§ 1983, 1988 (XI (in reference to counts VIII, IX & X), and XV (in reference to counts XII, XIII & XIV)); threatening with a shovel (XVI); violation of court orders (XVII); negligent infliction of emotional distress (XXIII); intentional infliction of emotional distress (XXIV); and punitive damages (XXV). The complaint does not include the procedural due process claims addressed at the trial. See infra text.

3. As to the counts relevant to this appeal, the court entered a partial summary judgment in favor of the Town and the individual defendants on Counts XIX and XX; within months it entered a summary judgment for the Town and the individual defendants on Counts XI and XV on immunity grounds. The claims remaining for trial

trial establishes that the reconstruction resulted in an increased elevation of the Highland Terrace Road significant enough to destroy vehicle and foot access to the Lot 29 carriage house. The court entered judgment for the Town as to all counts except one, finding a taking with respect to Lot 29 on state constitutional grounds. In January 1996 the court denied King's motion to alter or amend the judgment and in June it held a hearing to assess damages for the Lot 29 taking. The court assessed damages of $11,500. King's appeal followed.

## II.

### Insurance Waiver of Governmental Immunity

[¶ 7] King contends that the Town waived its Maine Tort Claims Act immunity from liability for common law and statutory trespass by virtue of its failure to establish a lack of insurance coverage. Governmental immunity is an affirmative defense, see M.R. Civ. P. 8(c), and the Town bears the burden of establishing that it had no insurance coverage for King's claim. *Moore v. City of Lewiston*, 596 A.2d 612, 615 (Me.1991). Although the Town pleaded the defense, it did not create a record on this issue beyond an answer to an interrogatory which indicated its status as a member of the Maine Municipal Association Property and Casualty Pool.[4] However, despite numerous opportunities to do so (including three summary judgment dispositions and a trial), King did not press the Town's failure to address its insurance

coverage until this appeal. The issue therefore has not been preserved for appeal.

### Real Actions

[¶ 8] King contends that the court erred by finding that the location of the Highland Terrace Road had not changed significantly since 1932 and that the road is a public way, and therefore erred by denying her real action[5] for a declaration of her exclusive possession of the portion of the road that runs next to Lot 29 as well as of "seized portions" of Lots 28 and 29. King also asserts that the court erred by denying her real action as to the Main Street Lot.

[¶ 9] King had the burden of proof on her claims. We will not set aside the court's finding against her unless the evidence below compelled a contrary conclusion. *Blackmer v. Williams*, 437 A.2d 858, 862 (Me.1981). We review questions of law de novo. *Collins v. Trius, Inc.*, 663 A.2d 570, 572 (Me.1995).

[¶ 10] The court's findings as to the prescriptive use[6] of the road render the issue of its exact location superfluous. Even assuming arguendo that the road shifted[7] to a location which rendered it part of Lot 29 according to the quitclaim deeds issued by the Town in 1966 and 1974, the road already had become a public way by open, notorious, visible, and uninterrupted use for at least 20 consecutive years well prior to the late 1950s.[8] *Inhabitants of Town of Kennebunk-*

were those made in Counts I, II, III, IV, V, VI, XVII, XXI and XXII.

4. Contrary to the Town's claim, certificates of self-insurance may waive immunity. Cf. *McPherson v. Auger*, 842 F.Supp. 25, 28 (D.Me.1994) (self-insurance certificate does not waive immunity where defendants bore burden of proof and created a record demonstrating coverage was limited to tortious acts irrelevant to facts of case).

5. The purpose of a "real action" is to recover the possession of land. *Rogers v. Biddeford & Saco Coal Co.*, 137 Me. 166, 168, 16 A.2d 131 (1940).

6. The court also determined that the road is a *public way by virtue of dedication and acceptance. In view of the overwhelming evidence as to prescriptive use, however, we decline to address the parties' contentions as to that theory.*

7. Evidence adduced at the trial, including that provided by King's own expert, showed that the road had shifted eastward and downhill approximately 15 feet by 1916 and another 6 feet by the time King purchased the lot in 1974.

8. The evidence adduced at the trial as to prescriptive use included the following: King's expert John Wiesendanger testified that land was set aside as passways through and on Lot 29 as far back as the 19th century; Archie Wing, whose testimony the court said it found "particularly credible" and whose family lived on a neighboring lot in the 1940s, testified that by the mid–1940s the road was passable by vehicle and that it was used in that way by his family as well as the neighbors; Wing also testified that his father and the Town eventually exchanged land so that the road didn't have to pass so close to their house, and that the Town then built a

*port v. Forrester*, 391 A.2d 831, 833 & n. 1 (Me.1978); see *MacKenna v. Inhabitants of Town of Searsmont*, 349 A.2d 760, 762–63 (Me.1976) (once prescriptive easement is acquired, use is not restricted to the type or extent of traffic that occurred during the prescriptive period; any use consistent with a public way is permitted). According to the evidence adduced at the trial, including King's own testimony, that use continued unabated throughout the 1960s and 1970s. Thus, the court did not err by concluding that the Highland Terrace Road is a public way and, to the extent that conclusion determined its disposition of King's real action as to Lots 28 and 29, the court did not err by denying those claims. King's contentions as to the related issue whether the Town overstepped its limited rights to improve the Highland Terrace Road are likewise unavailing. See *Briggs v. L & A Horse R.R. Co.*, 79 Me. 363, 366–67, 10 A. 47 (1887) (once a public way is established the municipality may maintain and repair it as conditions warrant); *Estes v. Inhabitants of Troy*, 5 Me. 368, 369 (1828) (same).

[¶ 11] Finally, the court did not err by denying King's real action for declaration of her exclusive possession of the Main Street Lot given the lack of evidence as to the Town's possession of any portion of the lot

and its removal years earlier of the construction materials it had piled there.

### Common Law and Statutory Trespass

[¶ 12] King claims errors in the court's dispositions of her statutory trespass claims pursuant to 14 M.R.S.A. §§ 7552, 7555, and her common law trespass claims as to Lots 28 and 29. However, King fails to address or even acknowledge the immunities of the Town or the individual defendants pursuant to which these claims were denied. We review questions of law de novo. *Collins v. Trius, Inc.*, 663 A.2d 570, 572 (Me.1995). The court correctly disposed of all of King's trespass claims[9] by applying the immunities conferred by the Maine Tort Claims Act on governmental entities and their officials and employees. 14 M.R.S.A. §§ 8103, 8111 (1980 & Supp.1996); *Whalen v. Town of Livermore*, 588 A.2d 319, 322 (Me.1991).[10]

### Federal and State Takings

[¶ 13] King contends that the court erred in its post-trial decision to deny her state takings claims, Me. Const. art. I, § 21, as to Lot 28 and the Main Street Lot, but does not address whether the damage to those properties is significant enough to warrant compensation. See *Seven Islands Land Co. v. Maine Land Use Regulation Comm'n*, 450 A.2d 475, 482 (Me.1982) (serious impairment

roadway that curved around their house and down the east side of the hill and past Lot 29; Wing testified that the road, which rendered Highland Terrace a loop, was completed at least before 1948, when he went into the service; former selectman Bruce Gray testified he could recall the Town–Wing land swap in 1944, as well as riding his bicycle around the loop during the mid–1950s and seeing vehicle traffic on it adjacent to Lot 29 by the mid–1950s; Town Public Works Director Herbert Whittier testified that for 50 years the Town's residents have understood the road to be circular and used it as a vehicle track; Whittier, who started work in the department in 1969, also testified that the Town's maintenance of the road at that time included plowing, and graveling and grading several times a year; Whittier testified that in the mid–1970s the Town improved the road in several ways, including widening it and adding gravel in the process of placing a sewer line underneath, and continued maintenance and plowing. In addition, Thomas Eastler, an aerial photograph analyst, also testified that 1944 photographs showed no evidence of significant "vehicular trafficability"

over the road in front of Lot 29, though he conceded there may have been "scattered" horse and "Model T" traffic at that time. King herself testified that area residents asked the Town to post speed-limit signs on the road in the late 1940s and in 1965, but were refused on the ground that it was a private road, and that they responded by posting homemade signs. This testimony indicates significant public use of the road as far back as the 1940s.

9. These claims include King's claim about the wetness in her basement caused by the new drainage system installed by the Town at her request.

10. Given its determinations as to King's claims as discussed supra, the court's denial of her request for prohibitory injunctive relief was well within its discretion. See *Littlefield v. Adler*, 676 A.2d 940, 942 (Me.1996) (we review the denial of injunctive relief for an abuse of discretion). Also, the court was correct to assert that King is not entitled to any damages for alleged violations of the preliminary injunction ordered in 1989.

of an individual's property interest, use, or enjoyment is prerequisite for a compensable taking); *Foss v. Maine Turnpike Auth.*, 309 A.2d 339, 344 (Me.1973) (same). Here, the evidence did not compel a contrary holding and the court's findings therefore were not erroneous. *Blackmer*, 437 A.2d at 862.

[¶ 14] King also asserts that the court erred by denying her federal takings claims as to all three of the lots.[11] The court was correct to do so, however, because her federal takings claims are not ripe. *Williamson County Regional Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 196, 105 S.Ct. 3108, 3121–22, 87 L.Ed.2d 126 (1985) (property owners must exhaust state remedies as precondition to raising a federal takings claim); *Drake v. Town of Sanford*, 643 A.2d 367, 369 (Me.1994) (until plaintiff has resorted to state procedure and the amount of compensation has been determined, a claim under the federal Just Compensation Clause is premature); see also *Culebras Enter. Corp. v. Rivera Rios*, 813 F.2d 506, 515–16 (1st Cir.1987) (state non-statutory inverse condemnation remedy must be pursued before federal constitutional claim can be maintained).

## Procedural Due Process

[¶ 15] King contends that the court erred by denying her claims of a deprivation of due process given the Town's failure to conduct an eminent domain proceeding, and thereby afford her a hearing with full procedural protections, prior to taking her property. We disagree. As King concedes, the Town provided her actual notice of the Highland Terrace Road reconstruction project, she had an opportunity to discuss the matter with Town officials, and she responded by filing a lawsuit in which she obtained preliminary injunctive relief but never requested an administrative hearing.[12] In addition, the taking that occurred with respect to Lot 29 was merely incidental to the reconstruction and therefore the onus was on King to pursue just compensation through a non-statutory inverse condemnation proceeding, see *Foss*, 309 A.2d at 344–45, which she eventually did. Indeed, to the extent there was a taking with respect to Lot 29, King has been compensated.

## Section 1983

[¶ 16] King appeals the court's denial of liability pursuant to 42 U.S.C.A. §§ 1983, 1988 (1994).[13] King's contentions on this issue are without merit. The record reveals no constitutional violations for which the Town could be liable pursuant to an established custom, policy, or practice aimed at depriving her of her property rights. See *Monell v. Department of Social Services of New York City*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978) (liability may be imposed pursuant to section 1983 when challenged conduct reflects practices so permanent and well-settled as to constitute a 'custom or usage' with the force of law). Nor has King defeated qualified immunity for the individual defendants by demonstrating their engagement in specific actions that transgressed clearly established constitutional rights. See *Lyons v. City of Lewiston*, 666

---

11. King conceded at oral argument that her federal takings claim as to Lot 29 was no longer viable given the favorable outcome of her state non-statutory inverse condemnation action.

12. Moreover, as the court noted, although King's due process claims were addressed at the trial, she did not raise them in her amended complaint.

13. As a threshold matter, these claims are somewhat problematic given that King's complaint included two counts that were characterized as section 1983 claims only later and then only by the Town in its first motion for a summary judgment as to two of the individual defendants; moreover, those counts made specific reference only to constitutional violations pursuant to other counts of malicious prosecution, malicious use of process, conversion, and false arrest, all of which are irrelevant to this appeal. Nor, in response to the second summary judgment motion, did King argue in terms of the requirements for liability pursuant to section 1983, such as a municipal custom or policy aimed at depriving her of constitutional right sand individual acts reflecting such established practices, or independent constitutional violations by municipal officials or employees that could provide a basis for municipal liability. However, when the court issued judgment as a matter of law on King's claims as to the individual defendants' alleged role in the takings on the ground of qualified immunity, it implicitly addressed the issue of section 1983 liability. Thus we are bound to address King's contentions as to this claim on appeal.

A.2d 95, 99 (Me.1995). Even in the context of Lot 29, with respect to which the court found a taking, a reasonable Town employee might not have understood that increasing the roadway's elevation would destroy accessibility to the parcel. See id. (public official is entitled to qualified immunity if a reasonable official would not have understood that he was violating the plaintiff's rights). The court therefore did not err in extending qualified immunity to the individual defendants.

The entry is:

Judgment affirmed.

